IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| AUSTIN AMOS, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>TRIDENT MEDICAL CENTER, LLC d/b/a TRIDENT MEDICAL CENTER; and HCA HEALTHCARE, INC.<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT** |

Resident, Austin Amos, M.D. ("Resident"), complaining of the acts of Defendants Trident Medical Center, LLC, d/b/a, Trident Medical Center ("Trident") and HCA Healthcare, Inc. ("HCA") (Trident and HCA jointly "Defendants").

**NATURE OF CLAIM**

1. Resident files this action for actual damages, compensatory damages, punitive damages, reinstatement, injunctive relief, prejudgment interest, and attorneys' fees and costs, and for other relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, et seq. ("Title VII").

2. Resident also files pendant state law claims pursuant to 28 U.S.C. § 1367(a).

**PARTIES, JURISDICTION, AND VENUE**

3. Resident is a citizen and resident of Charleston County, South Carolina.

4. Trident is a foreign limited liability company that operates a healthcare facility in Charleston County, South Carolina.

5. HCA is a foreign corporation that operates a healthcare system that includes 190 hospitals across the country, including Trident.

Complaint
Case No.:

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e–5(f)(3) and personal jurisdiction over Defendants as each operates in this district.

7. Venue is proper in the District of South Carolina under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred within this District.

8. Resident timely filed a Charge of Discrimination with the EEOC and has exhausted all administrative remedies.

## FACTUAL ALLEGATIONS

9. Resident realleges each and every allegation above as if repeated here verbatim.

10. On information and belief, Defendants jointly operated a Residency Program in which Resident was an employee in the Emergency Medicine Residency at Trident.

10. Resident began his residency with Defendants on July 1, 2022. He was promoted to PGY-3 after successfully completing prior training years.

11. Resident was recognized for his clinical competence, with evaluations noting his ability to function at an "Attending Level" and strong in-service scores.

12. Despite these outstanding evaluations, during the residency, Resident was disciplined for an alleged HIPPA violation; a tardiness; and an absence while female residents were not disciplined for having more severe allegations of HIPPA violations; numerous incidents of tardiness; and numerous absences.

13. On January 16, 2025, Defendants summoned Resident to Human Resources and, along with the Program Director, informed him that vague allegations of misconduct—potentially sexual harassment—had been made against him. Defendants told Resident that he was not allowed to record or document the meeting. Resident asked if he should have a lawyer, but Defendants told him, "No, this is not a legal matter." Despite repeated requests from Resident, Defendants

refused to disclose any specifics about the allegations, the identity of the accuser, or any of the evidence relied upon by Defendants.

14. Despite repeated requests from Resident, Defendants refused to disclose any specifics about the allegations, the identity of the accuser, or any of the evidence relied upon by Defendants.

15. During the meeting, Defendants asked Resident three (3) questions:

   A. "Have you ever spoken about a co-resident's body?"

   B. "Have you ever shared inappropriate pictures of co-workers?"

   C. "Have you ever spoken in derogatory manner to another resident?"

16. On January 24, Resident was informed that his employment was terminated.

**Exhibit 1 – Letter from Nicholas Connors, M.D., Program Director**.

17. Exhibit 1 stated, that Resident was entitled to file an appeal within five business days, and the appeal must include the following:

   A. The facts on which the appeal is based;

   B. The reason(s) the resident believes the decision was in error; and

   C. The remedy requested.

Despite Defendants issuing these requirements, Defendants continued to refuse Resident any access to the underlying facts or findings used against him; thus making it impossible for Resident to appeal his termination properly.

18. Resident timely filed an appeal on January 31.

19. Around February 6, Resident filed a Charge of Gender Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC").

Complaint
Case No.:

20. On March 6, HCA issued a denial of Resident's appeal; upholding the termination of Resident's employment; and stating, "This decision is final." **Exhibit 2 – Letter from Nilmarie Guzman, M.D., Designated Institutional Official**.

21. On May 5, 2025, the EEOC issued its Notice of Right to Sue, which required Resident to file any lawsuit against Defendants within 90 days of his receipt of the Notice.

**FOR A FIRST CAUSE OF ACTION**
(Title VII – Gender Discrimination)

22. Resident realleges each and every allegation above as if repeated here verbatim.

23. Defendants discriminated against Resident based on his gender by subjecting him to disciplinary standards not applied to similarly situated female residents.

24. This disparate treatment included the following areas:

1. Allegations of HIPPA violations;

2. Allegations of tardiness;

3. Allegations of unexcused absences; and

4. The method and procedures by which Defendants handled the investigation and termination process with Resident.

25. This gender discrimination and the resulting termination of employment and residency program caused actual damage to Resident's reputation, career prospects, future career earnings as a medical doctor, and mental well-being.

**FOR A SECOND CAUSE OF ACTION**
(Title VII – Retaliation)

26. Resident realleges each and every allegation above as if repeated here verbatim.

Complaint
Case No.:

27.  Upon information and belief, the allegations leading to Resident's termination were influenced by past internal investigations of Resident in which he had fully cooperated with Defendants' investigation in good faith.

28.  Defendants then retaliated against Resident by using Resident's participation and cooperation against him.

29.  Defendants retaliated against Resident by continually disciplining him and eventually terminating his employment and residency.

30.  This retaliation caused actual damage to Resident's reputation, career prospects, future career earnings as a medical doctor, and mental well-being.

## FOR A THIRD CAUSE OF ACTION
(Breach of Contract)

31.  Resident realleges each and every allegation above as if repeated here verbatim.

32.  Resident and Defendants entered into a binding Graduate Medical Education Agreement ("GME Agreement") on or about March 21, 2022, governing the terms of his appointment in the Emergency Medicine Residency Program through June 30, 2025.

33.  The GME Agreement expressly incorporated by reference the GME Resident & Fellow Core Manual as part of the contract, and stated that the policies and procedures in the Manual would control in the event of conflict.

34.  The GME Agreement included specific provisions governing promotion, discipline, and dismissal, each of which required adherence to GME Manual standards, including progressive discipline, timely remediation, and the right to **due process** in any adverse action.

35.  Under the GME Manual, remediation is a formalized process requiring a written plan, milestones, and oversight by the Clinical Competency Committee (CCC), and review for successful completion within 90 days.

Complaint
Case No.:

36. Resident's April 2024 remediation was never formally closed out, nor was he given notice of successful completion or failure by the CCC. Instead, the Program reinstated him in June 2024 and continued to rely on the same allegations through January 2025 to justify his termination, circumventing procedural requirements.

37. This indefinite and ambiguously applied remediation structure was a breach of the GME Agreement and GME Manual provisions.

38. The GME Manual mandates that any resident facing dismissal must be afforded due process including notice of the specific allegations, access to underlying evidence, and an opportunity to be heard before neutral decision-makers.

39. Resident was never provided access to the allegations or documentation relied upon during the January 2025 investigation. He was merely questioned in generalities by HR and dismissed without notice of the factual findings or the identity of his accuser(s).

40. During the appeal, he again requested access to the evidence and due process rights outlined in the GME Manual, which were denied. This constitutes a material breach of Section 8 of the GME Agreement and the Due Process Policy.

41. The Agreement guaranteed promotion based on successful completion of defined competencies, subject to evaluation by the CCC. Resident met all objective clinical criteria and had been promoted to PGY-3 prior to the events in question.

42. The decision to terminate him lacked academic basis and did not follow the defined process for evaluating failure to meet educational milestones, nor did it arise from CCC findings. The use of vague, non-clinical accusations disconnected from clinical performance was a breach of the GME Agreement and GME Manual provisions.

Complaint
Case No.:

43. The GME Manual mandates that residents be allowed to submit grievances and appeals, with impartial review by a panel appointed outside the resident's program. Resident was constructively denied of this right by being deprived of all information necessary to present a meaningful defense, along with Defendants conducting an opaque and unilateral process that lacked a panel hearing, meaningful review, or written decision stating the grounds upon which his termination appeal was denied.

44. These breaches caused actual damage to Resident's reputation, career prospects, future career earnings as a medical doctor, and mental well-being.

## FOR A FOURTH CAUSE OF ACTION
(Breach of the Covenant of Good Faith and Fair Dealing)

45. Resident realleges each and every allegation above as if repeated here verbatim.

46. In every contract, there is an Implied Covenant of Good Faith and Fair Dealing.

47. Defendants' actions, outlined above, show that Defendants breached, in numerous ways, the Covenant of Good Faith and Fair Dealing.

48. These breaches caused actual damage to Resident's reputation, career prospects, future career earnings as a medical doctor, and mental well-being.

## FOR A FIFTH CAUSE OF ACTION
(Breach of Contract with Fraudulent Intent)

49. Resident realleges each and every allegation above as if repeated here verbatim.

50. When Defendants questioned Resident in January 2025 without informing him of the specific allegations or the accuser's name, they breached the GMA Agreement by being dishonest and unfair.

Complaint
Case No.:

51. Defendants then continued with this dishonest and unfair dealing when they required Resident to appeal his termination of employment and dismissal from the residency program without informing him of the specific allegations or the accuser's name.

52. With this conduct, Defendants breached the GMA Agreement with Fraudulent Intent to harm Resident.

## PRAYER FOR RELIEF

**WHEREFORE**, Resident respectfully requests that the Court grant the following relief:

A. Reinstatement into the Emergency Medicine Residency Program with retroactive pay and benefits;

B. Expungement of *all adverse records* and correction of personnel files;

C. Declaratory relief finding Defendants' conduct unlawful;

D. Actual damages for back pay, front pay, lost benefits, reputational harm, diminished earning capacity, and other compensatory and consequential damages resulting from Defendants' unlawful conduct in an amount to be determined at trial;

E. Punitive damages for Defendants' willful and reckless disregard of Resident's civil rights under Title VII and the breach of the GME Agreement with Fraudulent Intent;

F. Attorneys' fees and costs; and

G. Any further relief as the Court deems just and proper.

Bruce E. Miller, Esq. (Fed Bar No. 3393)
BRUCE E. MILLER, P.A.
1459 Stuart Engals Blvd., Suite 202
Mount Pleasant, SC 29464
T: 843.579.7373
F: 843.614.6417
bmiller@brucemillerlaw.com
**ATTORNEY FOR PLAINTIFF**

Mount Pleasant, SC
August 4, 2025