UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| AUSTIN AMOS, M.D., | ) | Civil Action No. 2:25-cv-9621-RMG-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| TRIDENT MEDICAL CENTER, LLC | ) | |
| d/b/a TRIDENT MEDICAL CENTER | ) | |
| | ) | |
| Defendant. | ) | |

## I.   INTRODUCTION

This action arises from Plaintiff's residency at Trident Medical Center.  Plaintiff alleges that Defendants subjected him to discrimination based on his gender and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. He also alleges a cause of action for breach of contract. Presently before the Court is Defendant Trident Medical Center, LLC d/b/a Trident Medical Center's (Trident) Motion to Compel Arbitration (ECF No. 8). Plaintiff filed a Response (ECF No. 15), Trident filed a Reply (ECF No. 17), and Plaintiff filed a Sur-Reply (ECF No. 22). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(), DSC. This Report and Recommendation is entered for review by the District Judge.

## II.   RELEVANT FACTS

### A.   Factual Allegations

Plaintiff began his residency with Defendants on July 1, 2022. He was promoted to PGY-3 after successfully completing prior training years. Plaintiff was recognized for his clinical

1

competence, with evaluations noting his ability to function at an "Attending Level" and strong in-service scores. Despite these positive evaluations, during the residency, Plaintiff was disciplined for an alleged HIPPA violation; a tardiness; and an absence while female residents were not disciplined for having more severe allegations of HIPPA violations; numerous incidents of tardiness; and numerous absences. Compl. ¶¶ 10-12 (ECF No. 1).

On January 16, 2025, Defendants summoned Plaintiff to Human Resources and, along with the Program Director, informed him that vague allegations of misconduct—potentially sexual harassment—had been made against him. Defendants told Plaintiff that he was not allowed to record or document the meeting. Plaintiff asked if he should have a lawyer, but Defendants told him, "No, this is not a legal matter." Despite repeated requests from Plaintiff, Defendants refused to disclose any specifics about the allegations, the identity of the accuser, or any of the evidence relied upon by Defendants. During the meeting, Defendants asked Plaintiff three (3) questions: (1) "Have you ever spoken about a co-resident's body?", (2) "Have you ever shared inappropriate pictures of co-workers?", and (3) "Have you ever spoken in derogatory manner to another resident?" On January 24, Plaintiff was informed that his employment was terminated. Compl. ¶¶ 13-16; Connors Letter (ECF No. 1-1).

The letter informing Plaintiff of his termination stated that Plaintiff was entitled to file an appeal within five business days, and the appeal must include the facts on which the appeal is based; the reason(s) the resident believes the decision was in error; and the remedy requested. Despite Defendants issuing these requirements, Defendants continued to refuse Plaintiff any access to the underlying facts or findings used against him; thus making it impossible for Plaintiff

to appeal his termination properly. Plaintiff timely filed an appeal on January 31. Compl. ¶¶ 17-18.

Around February 6, Plaintiff filed a Charge of Gender Discrimination and Retaliation with the Equal Employment Opportunity Commission (EEOC). On March 6, HCA issued a denial of Plaintiff's appeal; upholding the termination of Plaintiff's employment; and stating, "This decision is final." Compl. ¶¶ 19-20; Guzman Letter (ECF No. 1-2).

**B.        Arbitration Agreement**

During Plaintiff's fourth year of medical school he entered into the National Resident Matching Program (the "Match"). The Match is a national system to place graduating medical students into residency training programs. Residency training is required to become board certified in each specialty. With very few exceptions, the Match is the only way for a newly graduated medical student to enter residency. At times, there are programs that will offer spots "outside the Match," but these are typically non-accredited programs, and this is extremely rare. During his fourth year of medical school, there were no programs in emergency medicine training operating "outside the Match." Plaintiff asserts that if your goal is to practice clinical medicine, the only realistic way to proceed forward in your career is to enter the Match. Pl. Decl. ¶ 34 (ECF No. 15-1). Plaintiff signed the Match Participation Agreement for Applicants (the Match Agreement), which includes the following language:

9.0 BINDING COMMITMENT

Upon conclusion of the applicable Fellowship Match, matched applicants:

1. Are in a binding commitment with the program and must accept an appointment as matched or offered:

> a. Applicants with a match commitment who seek a concurrent year position, absent a waiver or deferral from the NRMP, shall be presumed to have violated this Agreement.

> 2. Must begin training on the start date specified in the appointment contract with the intent to complete the program:

> . . .

> d. Applicants who give notice of resignation, resign, or vacate a position within 45 days of the start date specified in the appointment agreement, without having an approved waiver or deferral from the NRMP, will be in violation of this Agreement.

Match Agreement, Section 9, 1(a) (ECF No. 15-2). Plaintiff was "matched" with Trident. Pl. Decl. ¶¶ 35, 39.

On May 5, 2023, Plaintiff signed the Graduate Medical Education Trainee Agreement (GME Agreement) with Trident, which included the arbitration agreement at issue here:

> Any controversy or claim arising out of or related to the employment relationship, this Agreement, or any breach thereof, or any other matter that could be presented in a court of law shall be settled by arbitration in the County where Hospital is located, in accordance with the rules and procedures of alternative dispute resolution and arbitration established by the Alternative Dispute Resolution Service of the American Health Lawyers Association ("AHLA"), and judgment upon any award rendered may be entered in any court having jurisdiction thereof. Should any controversy or claim require an exhaustion of remedies before such matter could be brought before a court of original jurisdiction, said exhaustion of remedies must be concluded before arbitration can proceed. Such arbitration shall be conducted before a single AHLA arbitrator selected jointly by the parties, or in the event the parties are unable to agree, designated by the AHLA. To the extent permitted by law, the Parties hereby jointly and severally waive any and all right to trial by jury in any action or proceeding arising out of or relating to the employment relationship or this Agreement, or the obligations hereunder. The Parties each represent to the other that this Waiver is knowingly, willingly and voluntarily given. This provision does not preclude Hospital from filing any cross-claim or third-party claim against Trainee in a court of law as a result of litigation initiated against Hospital by a third party.

GME Agreement ¶ 5(F) (ECF No. 8-2).

4

By signing the GME Agreement, Plaintiff acknowledged and agreed that "[a]ny controversy or claim arising out of or related to the employment relationship, this Agreement, or any breach thereof, or any other matter that could be presented in a court of law shall be settled by arbitration." Id. The arbitration agreement states that the parties "each represent to the other that this [arbitration agreement] is knowingly, willingly, and voluntarily given." Id.

## III.     DISCUSSION

The FAA "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). While Congress considered the advantage of expeditious resolution of disputes through arbitration in enacting the FAA, its primary purpose was to enforce agreements into which parties have entered. Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468,478 (1989). Section 4 of the FAA provides the right to a jury trial on the issue whether a valid agreement to arbitrate exists. 9 U.S.C. § 4.

A party seeking to compel arbitration must establish the following four elements: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute. Am. Gen. Life & Accident Ins. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005).

Plaintiff does not dispute elements one, three, or four. Further, he does not dispute that that a written agreement between the parties exists the includes an arbitration agreement covering

claims raised in this case. However, he argues that the arbitration agreement is unenforceable because it is unconscionable.

In deciding whether the parties have an enforceable agreement to arbitrate, courts apply state law principles governing the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26. The "liberal federal policy favoring arbitration agreements manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.' " Mitsubishi, 473 U.S. at 625 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983)). However, the presumption in favor of arbitration "applies only when 'a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand,' not when there remains a question as to whether an agreement even exists between the parties in the first place." Raymond James Fin. Servs. v. Cary, 709 F.3d 382, 385-386 (4th Cir. 2013).

The Supreme Court has directed that we "apply ordinary state law principles that govern the formation of contracts," First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Thus, state law determines questions "concerning the validity, revocability, or enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 493 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without

6

contravening [the FAA]." Dr.'s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).

Under South Carolina law, to prove an arbitration provision unconscionable, a plaintiff must show that (1) they lacked a meaningful choice as to whether to arbitrate because the Arbitration Agreement's provisions were one-sided, and (2) the terms were so oppressive no reasonable person would make them and no fair and honest person would accept them. Simpson v. MSA of Myrtle Beach, Inc., 373 S.C. 14, 24–25, 644 S.E.2d 663, 668 (2007). These two requirements are often referred to as procedural unconscionability and substantive unconscionability. See, e.g., Damico v. Lennar Carolinas, LLC, 437 S.C. 596, 612, 879 S.E.2d 746, 755 (2022) (citing 17A Am. Jur. 2d Contracts § 272). Ultimately, "unconscionability requires a finding of a lack of meaningful choice coupled with unreasonably oppressive terms." Id. (emphasis in original).

Plaintiff's only argument against enforcing the arbitration provision of the GME Agreement is that he had no meaningful choice. He argues that he had no choice but to sign the GME Agreement, which includes the arbitration provision, because otherwise he would have violated the Match Agreement he signed, which requires a participant in the Match program to accept a residency with the program with which the participant was matched. He argues that violation of the Match Agreement results in removal from the Match program and the Match program is, "with very few exceptions," "the only way for a newly graduating medical student to enter residency." Pl. Decl. ¶ 34. Accordingly, he argues, refusing to sign Trident's GME Agreement containing the arbitration provision would have resulted in removal from the Match

program, thereby ending his career goal of becoming an emergency medicine doctor.[1] Pl. Decl. ¶ 40.

As an initial matter, Plaintiff's Declaration makes no mention of any attempt on his part to negotiate changes to any of the terms of the GME Agreement or Arbitration Agreement contained therein. Nevertheless, even if Plaintiff had tried and failed to negotiate the terms of the agreement, adhesion contracts, i.e., contracts offered on a "take-it-or-leave-it" basis with terms that are not negotiable, are not per se unconscionable. Simpson, 373 S.C. at 27, 644 S.E.2d at 668 (citing Munoz v. Green Tree Fin. Corp., 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001)). "The distinction between a contract of adhesion and unconscionability is worth emphasizing: adhesive contracts are not unconscionable in and of themselves so long as the terms are even-handed." Damico, 437 S.C. at 614, 879 S.E.2d at 756 (emphasis in original).

As stated above, Plaintiff does not address the second factor required to find an arbitration agreement unconscionable, that is, whether the terms of the agreement were so oppressive no reasonable person would make them and no fair and honest person would accept them. Simpson v. MSA of Myrtle Beach, Inc., 373 S.C. at 25, 644 S.E.2d at 668. "Mutuality is a paramount consideration when assessing the substantive unconscionability of a contract term." Damico, 879 S.E.2d at 757 (quoting 17A Am. Jur. 2d Contracts § 272). Plaintiff has identified no oppressive, one-sided terms in the arbitration provision. The terms of the arbitration provision are equally applicable to both Trident and Plaintiff other than one term not relevant here.[2]

---

[1] In support of this argument, Plaintiff cites to an Interim Staff Report by the House Judiciary Committee, Subcommittee on the Administrative State, Regulatory Reform, and Antitrust titled Medical Mis-Match: How a Residency Hiring Monopoly Harms Patients, Doctors, and the American Public, in which the Committee concludes that the Match restrictions detailed above "eliminate competition among teaching hospitals and residency programs, as the hospitals know that residents cannot 'leverage one offer against another offer' or demand better employment terms." House Report p. 34 (ECF No. 22-1),

[2] "This provision does not preclude Hospital from filing any cross-claim or third-party claim against Resident in a

In sum, Plaintiff fails to show that the arbitration agreement is unconscionable or otherwise unenforceable. Thus, because a valid arbitration agreement exists between the parties and the claims raised in this action fall within the scope of that agreement, compelling this matter to arbitration is appropriate. Though Trident seeks dismissal of this action, Plaintiff asks, that if the Court determines that this case should be sent to arbitration, that it stay the case rather than dismiss it. The Supreme Court has held that "when a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the case" and must stay it.  Smith v. Spizzirri, 601 U.S. 472, 476 (2024) (interpreting 9 U.S.C. § 3).

## IV.    CONCLUSION

For the reasons discussed above, it is recommended that Trident's Motion to Compel Arbitration (ECF No. 8) be granted and this case be stayed while the action proceeds in arbitration.

    s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 2, 2026
Florence, South Carolina

---

court of law as a result of litigation initiated against Hospital by a third party." GME Agreement ¶ 5(F). A single one-sided term is generally not enough to make an arbitration clause substantively unconscionable. Thomerson v. Covercraft Indus., LLC, No. 2:23-CV-02225-DCN, 2024 WL 1251532, at *16 (D.S.C. Mar. 25, 2024) (citing Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999)) (applying South Carolina law and finding that, despite one non-mutual provision, the arbitration agreement as a whole did not seek to undermine the neutrality of the proceeding).